[Cite as *State v. Horton*, 2012-Ohio-3340.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

DEMETRIUS D. HORTON

    Appellant

C.A. No.    26030

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 11 02 0315

DECISION AND JOURNAL ENTRY

Dated: July 25, 2012

BELFANCE, Judge.

**{¶1}** Defendant-Appellant Demetrius Horton appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

**{¶2}** Mr. Horton was indicted in February 2011, for felonious assault, disrupting public services, and two counts of domestic violence, all related to an incident that took place on January 11, 2011. In addition, Mr. Horton was indicted on one count of intimidation of a crime victim or witness based upon conduct alleged to have taken place from January 11, 2011, through February 3, 2011. In March 2011, a supplemental indictment was filed, charging Mr. Horton with one count of felonious assault and two counts of domestic violence based upon events that occurred on January 18, 2011. All counts at issue involved the same victim, Mr. Horton's girlfriend, who was also the mother of his child.

{¶3} The matter proceeded to a jury trial, at which time the State dismissed the felonious assault charge stemming from the events of January 11, 2011. The jury found Mr. Horton guilty of felonious assault and one of the counts of domestic violence based upon the events of January 18, 2011. The jury found Mr. Horton not guilty of the remaining charges. The trial court sentenced Mr. Horton to a total of seven years in prison. Mr. Horton has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT HORTON'S OBJECTION TO HAVING A REGISTERED NURSE TESTIFY AS AN EXPERT WITNESS ON BATTERED WOMAN'S SYNDROME AND THE CYCLE OF VIOLENCE WITHOUT HAVING THE NURSE DECLARED AS AN EXPERT ON BATTERED WOMEN'S SYNDROME AND THE CYCLE OF VIOLENCE.

{¶4} Mr. Horton appears to assert in his first assignment of error that the trial court erred in allowing a witness to testify as an expert without declaring the witness an expert. Notably, Mr. Horton does not appear to assert that the witness was not qualified to testify as an expert or that her testimony failed to meet the standard set out in *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711; instead, his assignment of error is limited to whether the trial court committed reversible error in allowing the witness to testify without declaring her an expert. We do not agree.

{¶5} The witness at issue, Jill Bunnell, R.N., testified on behalf of the State. She examined the victim in the instant matter a few days following the January 18, 2011 incident. Ms. Bunnell testified that she has worked for Summa Health System for 31 years. At the time of the trial, Ms. Bunnell worked in the DOVE unit wherein she provided emergency services for individuals that have encountered some type of violence. Ms. Bunnell testified that:

I am a sexual assault nurse examiner as well as a domestic violence nurse examiner. * * * We did 40 hours of didactic training, which is classroom, book work, along with additional clinicals, crime lab, health department, police department. And then with the domestic violence it was building on that education through conferences and so forth, additional education. And that has been going on since 1998.

{¶6} The State also sought to have Ms. Bunnell provide testimony concerning the cycle of violence, over objections by defense counsel. The trial court allowed the State to question Ms. Bunnell about her qualifications. Ms. Bunnell indicated that, during her domestic violence nurse examiner training they "talk[ed] about, learn[ed] about the cycle of violence; how it affects victims of domestic violence and what's involved in those parts and pieces of the cycle of violence." She testified that, when she provides programs for law enforcement on domestic violence, the dynamics of the cycle of violence are included. Further, Ms. Bunnell indicated that she had previously testified in court on the cycle of violence and the dynamics involved in domestic violence situations. The State asserted that the testimony was permitted under *Haines*. After hearing argument, the trial court agreed and overruled defense counsel's objections. However, the trial court did not specifically declare Ms. Bunnell to be an expert witness.

{¶7} First, we do not see how the trial court's failure to declare Ms. Bunnell an expert witness prejudiced Mr. Horton. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). If anything, it would seem that having the trial court actually declare Ms. Bunnell an expert in front of the jury would have likely bolstered her credibility with the jury. *See United States v. Johnson,* 488 F.3d 690, 697-698 (6th Cir.2007).

{¶8} Second, because we cannot say that the trial court abused its discretion in allowing her testimony, we see no merit to Mr. Horton's argument. *See State v. McGlown*, 6th Dist. No. L-07-1163, 2009-Ohio-2160, ¶ 43; *State v. Scott,* 10th Dist. No. 90AP-255, 1990 WL

140548, *5 (Sept. 27, 1990); *State v. Skinner*, 2d Dist. No. 11704, 1990 WL 140897, *7 (Sept. 26, 1990) ("[S]o long as the record indicates that the trial court did not abuse its discretion, we will not disturb a decision to allow a witness to offer expert opinion testimony simply because 'magic' words do not appear on the face of the record."); *see also State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 95.

{¶9}    Evid.R. 702 states that:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶10}  Given Ms. Bunnell's qualifications and the anticipated scope of her testimony, we conclude that it fits within the realm contemplated by Evid.R. 702, and we cannot say the trial court abused its discretion in allowing her testimony.  Ms. Bunnell only testified on direct as to what the cycle of violence is, whether it is common for victims to recant, and whether she has ever seen a domestic violence victim be afraid to tell the truth.  Ms. Bunnell did not offer an opinion about the likelihood that the victim in the instant matter was telling the truth or whether

she was a battered woman. *See Haines*, 2006-Ohio-6711, at ¶ 56 ("[E]xperts who are called to testify in domestic violence prosecutions must limit their testimony to the general characteristics of a victim suffering from the battered woman syndrome. The expert may also answer hypothetical questions regarding specific abnormal behaviors exhibited by women suffering from the syndrome, but should never offer an opinion relative to the alleged victim in the case.") (Internal quotations and citations omitted.). Moreover, defense counsel thoroughly cross-examined Ms. Bunnell on the issue. In light of the foregoing, we overrule Mr. Horton's first assignment of error.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mr. Horton asserts in his second assignment of error that his convictions for felonious assault and domestic violence stemming from the January 18, 2011 incident are against the manifest weight of the evidence, essentially asserting that the victim was not credible. We do not agree. We note that while several of the witnesses' versions of events conflicted with other witnesses' versions of events or their own version of events, we cannot say that in resolving the conflicting testimony that the jury lost its way and created a manifest miscarriage of justice.

{¶12} In reviewing a challenge to the weight of the evidence, the appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶13} Mr. Horton was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and domestic violence in violation of R.C. 2919.25(A). R.C. 2903.11(A)(1) provides that "[n]o

person shall knowingly * * * [c]ause serious physical harm to another * * * ." R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶14} As Mr. Horton was not convicted of any charges in connection with the January 11, 2011 incident, our focus is on the January 18, 2011 incident. However, the January 11, 2011 incident will be discussed only to the extent it is necessary to provide background information. The victim testified that she has four children; Mr. Horton is the biological father of the youngest child. The victim has known Mr. Horton since 2006 and has been dating him during that time. Both Mr. Horton and the victim have fairly extensive criminal records, with Mr. Horton being released from prison only shortly before the first incident. The victim testified that she had been reforming her life, having graduated from truck driving school and obtaining her CDL. She stated that, on January 11, 2011, Mr. Horton came over to her home and brought bags, looking to stay at her house. She told him that he needed to "get some goals and get [himself] together[]" and that he could not stay if he was not going to do that. The two began arguing and the argument became physical. Ultimately, Mr. Horton was charged with multiple offenses related to that incident. However, the jury found him not guilty of those counts.

{¶15} After that incident, the victim and Mr. Horton somewhat reconciled. According to the victim, Mr. Horton began asking her for money to pay for an attorney to represent him with respect to the January 11, 2011 incident. The victim told him she did not have the money and that she was not willing to sell drugs to help him raise the money. Shortly before the January 18, 2011 incident, the two argued about the situation and, according to the victim, she told him she was leaving and that they did not need to see each other anymore. That day, the victim took her children to her friend Tisha's, house. Tisha was also friends with Mr. Horton.

The victim testified that she went to Tisha's to get away from Mr. Horton. As Tisha was just moving into the house, the victim brought some food, alcohol, clothes, and a TV and video game system for her children. When the victim arrived, Tisha was not home. As it was late, she put her children to bed and put a movie on for them. That evening, Tisha and the victim were drinking, and Mr. Horton showed up and began punching the victim. The victim testified that she was knocked unconscious after the second punch. The victim awoke to find her children yelling at her to go with them and her oldest son, G.S. had a shovel in his hands. They went outside and knocked on a neighbor's door. The neighbor answered and called 911 for the victim. The 911 call was placed shortly before 4:30 a.m.

{¶16} G.S., the victim's twelve-year-old son testified concerning the January 18, 2011 incident. G.S. testified that he, his siblings, and his mom, had been staying at his mom's house until the evening before the incident, at which time the victim packed up some items and they all went to stay at Tisha's house to get away from Mr. Horton. He and the siblings had been sleeping, but he woke up to use the bathroom and heard Mr. Horton and the victim arguing. G.S. testified that his mom told him to go back to sleep, but he stayed in the hallway. Then, Mr. Horton started slapping the victim. G.S. grabbed a bottle and threw it at Mr. Horton, but missed. He indicated that Mr. Horton and the victim then went into the living room and Mr. Horton started hitting the victim again. G.S. picked up a shovel and hit Mr. Horton in the head with it. Mr. Horton then took the victim into the bathroom and locked the door. When they came out, the victim "was bleeding and her eye was messed up." Then the victim started screaming for help and she and her family went and knocked on a neighbor's door and got the neighbor to call the police.

{¶17} Tisha testified on behalf of Mr. Horton. She denied being friends with the victim, and instead asserted that she was only friends with Mr. Horton. Tisha claimed to have never met the victim prior to the incident but knew that she was Mr. Horton's girlfriend. Tisha testified that she let Mr. Horton come over and take a shower on the evening before the incident. She testified that she left while Mr. Horton was still there and never saw the victim that evening. She said she stopped by the house a couple days later and found items strewn about, a hole in the bathroom door, blood in the bathroom, and glass from the bathroom window in the bathtub.

{¶18} Nonetheless, Tisha gave a statement to an investigator stating that, that day, the victim came over to Tisha's house with her children so that they could visit Mr. Horton. Tisha indicated that the victim left the children in the car and came into the house. Tisha stated that the victim had been drinking and she overheard the victim and Mr. Horton get into an argument. Tisha then left and told them to get the situation under control. Tisha told the investigator that the victim told her that she started the argument. At trial, Tisha indicated that the statement she gave to the investigator was what the victim had told her to say.

{¶19} Mr. Horton also testified on his behalf. He testified to a different series of events concerning January 18, 2011. He stated that he was already over Tisha's house with the victim's two youngest children and the victim came there after work and brought her two oldest children. He indicated that the children went to bed and that he and the victim were drinking. The two began to argue, waking G.S. up. Mr. Horton testified that the victim started the fight. Mr. Horton testified that the victim hit Mr. Horton in the head with a shovel and then he hit the victim approximately three times. Thereafter, G.S. hit Mr. Horton with a liquor bottle. Mr. Horton stated that he then pushed the victim outside and locked the door. Mr. Horton got the children dressed, went outside with them, locked up, and then left. Mr. Horton was shortly

thereafter stopped by police and, according to Mr. Horton, told the police that someone jumped him. Mr. Horton further testified that the victim was not all bloody when he left like she appeared in the photographs that were admitted as exhibits. Mr. Horton testified that the victim wrote him while he was in jail and told him that she knows he did not do it and that she fell in the bathroom. However, the victim denied writing the letter at issue.

{¶20} Police were dispatched to the scene and en route came across Mr. Horton who matched the description that they were given. According to police, Mr. Horton said he was jumped by two males. At the time, Mr. Horton was holding a bloody rag on his head. In addition, police took a statement from the victim, who told police that she was at her friend's house for a housewarming and that a male came over and started going crazy, calling her a police snitch and that he started punching her repeatedly in the face. The victim had cuts around her eye and bottom and top lip requiring stitches, had two cracked teeth, and had an eye injury that resulted in a loss of vision to her right eye.

{¶21} According to the victim, after the January 18, 2011 incident, one of Mr. Horton's friends showed up on her back porch with a gun and told her to call Mr. Horton's attorney. Mr. Horton's attorney came over and asked the victim if perhaps she slipped and fell in the bathroom instead. Despite the fact that Mr. Horton's attorney was not relaying an accurate version of events, the victim agreed with his version because the man with the gun was still on her back porch and she was afraid.

{¶22} Jill Bunnell, R.N., testified concerning the victim's visit to DOVE unit at the hospital a few days following the January 18, 2011 incident. According to Ms. Bunnell, the victim reported the following concerning the assault by Mr. Horton on January 18, 2011, which she told the nurse occurred around midnight to 1 a.m.: "I was sitting in my friend's dining room.

I turned around, he punched my face. He kept punching. * * * He was pulling my hair. He grabbed my shirt. He kicked my back side. I was crawling for the door. He threw me off the porch." Ms. Bunnell further testified that the victim disclosed being strangled during the assault. Ms. Bunnell testified that the victim's injuries were consistent with being punched in the face.

{¶23} This is a case in which the jury was presented with a substantial amount of conflicting testimony to wade through and evaluate. *See State v. Andrews*, 9th Dist. No. 25114, 2010-Ohio-6126, ¶ 23 (noting that, when the jury is faced with conflicting evidence, the jury is not required to believe one person's testimony over another's). The jury was aware of both the victim's and Mr. Horton's criminal history, and the fact that the victim had changed her story. The jury also was presented with explanations as to why the victim's story changed. The victim was subject to vigorous cross-examination which highlighted possible inconsistencies in her testimony. However, the jury was additionally presented with a defense witness, Tisha, whose trial testimony differed from what she told investigators. Moreover, while Mr. Horton denied causing the severe injuries the victim suffered and claimed that the victim started the incident, he nonetheless did admit to hitting the victim. "A verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defense witnesses." *Id.* at ¶ 28. Here, even if the jury doubted the victim's credibility, it could have reasonably found G.S.'s testimony to be credible, and thereby concluded Mr. Horton was guilty of felonious assault and domestic violence. In light of the record before us, it would not be unreasonable for the jury to give more weight to G.S.'s testimony and less to either Tisha's or Mr. Horton's. Upon a thorough review of the record, we cannot say that the jury's credibility determinations were unreasonable; thus, we cannot say that Mr. Horton's convictions are against

the manifest weight of the evidence. Accordingly, Mr. Horton's second assignment of error is overruled.

## III.

{¶24} In light of the foregoing, we overrule Mr. Horton's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, P. J.
<u>CONCURS IN JUDGMENT ONLY.</u>


DICKINSON, J.
<u>CONCURRING.</u>

I concur in the majority's opinion and judgment. I write separately to note that I concur in the overruling of Mr. Horton's first assignment of error because the trial court neither violated Rule 702 of the Ohio Rules of Evidence nor abused its discretion by allowing Ms. Bunnell's testimony


<u>APPEARANCES:</u>

EDDIE SIPPLEN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.