[Cite as *State v. Powell*, 2014-Ohio-63.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 12CA010284 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAYSHAUN POWELL | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 10CR081774 |

DECISION AND JOURNAL ENTRY

Dated: January 13, 2014

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, Rayshaun Powell, appeals from his conviction in the Lorain County Court of Common Pleas. This Court affirms.

I

{¶2} In the summer of 2010, Y.M. and her family began staying with a friend of her mother's. The friend, Erica Perez, was married to Powell, who was incarcerated when Y.M.'s family began living with Perez. Several weeks after they began living with Perez, however, Powell was released from prison and came to stay at the apartment. According to Y.M., Powell sexually assaulted her one night when she and the other children at the apartment were left alone with him. According to Powell, the assault never occurred. Y.M. told her mother about the assault several weeks after she and her family had moved out of Perez' apartment.

{¶3}    A grand jury indicted Powell on one count of rape, in violation of R.C. 2907.02(A)(2).  Powell waived his right to a jury, and a bench trial was held.  The trial court found Powell guilty and sentenced him to eight years in prison.

{¶4}    Powell now appeals and raises two assignments of error for our review.  For ease of analysis, we rearrange the assignments of error.

II

Assignment of Error Number Two

THE GUILTY VERDICTS IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶5}    In his second assignment of error, Powell argues that his conviction is against the manifest weight of the evidence.  We disagree.

{¶6}    In determining whether a conviction is against the manifest weight of the evidence an appellate court:

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other.  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.  *Id.*  Therefore, this Court's "discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

{¶7} Powell was convicted of rape under R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Powell argues that his conviction is against the manifest weight of the evidence because Y.M.'s testimony lacked credibility. In particular, he criticizes the length of time that Y.M. waited to report the incident, her inability to pinpoint exactly when the rape occurred, and the fact that there was no physical evidence to support her testimony.

{¶8} Y.M. was fourteen years old at the time these events transpired. She testified that her mother brought her and her siblings to live with a friend, Erica Perez, at Perez' apartment in the summer of 2010. Y.M. testified that her mother frequently left the apartment for periods of time and that another adult, such as her mother's boyfriend, Perez, or Perez' boyfriend, might or might not be present when her mother left. A few weeks after Y.M. and her family moved into Perez' apartment, Perez' husband, Powell, was released from prison and came to stay there. Y.M. testified that, at some point during Powell's stay, she and the other children were left alone with him. Y.M. then described how Powell forced himself upon her.

{¶9} According to Y.M., Powell first approached her while she was watching television on the couch and the other children were sleeping on the floor around her. After briefly conversing with her, Powell asked Y.M. if he could touch her. Y.M. stated that she "kept refusing" Powell's advances, but he grabbed her arm and wrist and dragged her over to the first floor bedroom. Powell then turned on the television in the bedroom and left the room for several

minutes. Y.M. testified that there was pornography on the television. She further testified that she did not leave the room because she was scared.

{¶10} When Powell returned to the room, he turned off the television and undressed. He then made Y.M. undress and pulled her down on the bed. Y.M. testified that Powell engaged in vaginal and anal intercourse with her and, at one point, also made her perform fellatio. Y.M. stated that she told Powell "no" and "stop" during the encounter, but did not scream. She stated that she did not scream because she did not want the other children to know what was happening. She also testified that she tried to get away, but could not.

{¶11} After Powell released Y.M., she took a shower. Y.M. testified that she noticed that she was "bleeding a little" in the shower and that she experienced pain for several weeks after the incident. Y.M. testified that she did not tell anyone what had happened directly after the incident because Powell told her not to and because she did not think anyone would believe her. She eventually told her mother after she and her family left Perez' apartment and were living with a woman named Barbara, another of her mother's friends. Y.M. testified that she told her mother because she was "crying that [her] private part was hurting."

{¶12} Yelena M., Y.M.'s mother, testified that she and her children lived at Perez' apartment for several months in the summer of 2010. Yelena admitted that she left her children alone at times because she would visit other apartments in the vicinity. She further admitted that she left her children alone at the apartment on several occasions after Powell had moved in, despite her knowledge that he had just been released from prison.

{¶13} Yelena testified that she and her children stopped living at Perez' in late July 2010 and moved in with Barbara, another friend of hers. Several weeks later, Yelena observed Y.M. sitting at the dining room table "holding her stomach and * * * crying." When Yelena asked

Y.M. what was wrong, Y.M. indicated that she was in pain "[d]own there." Y.M. then admitted that Powell had sexually assaulted her.

{¶14} Powell testified in his own defense. He admitted that he had several prior convictions and was released from prison on June 12, 2010. Powell testified that he never lived at Perez' apartment, but admitted that he stayed there for four or five nights in July 2010 because he was helping clean the apartment and it was his son's birthday. Powell denied ever touching Y.M. inappropriately or ever being at the apartment alone with the children. According to Powell, he was never alone with the children because he "was trying to build trust up with [Perez]" after having gone to prison for "beat[ing] on her." Powell testified that he only spoke with Y.M. on a few occasions. He denied that anything had ever occurred which might have caused Y.M. to become upset with him.

{¶15} William Evans, II, the president of Poly-Tech Associates, testified that he administered a polygraph examination to Powell. During the course of the polygraph, Evans asked Powell the following questions: (1) "Did you finger [Y.M.'s] vagina"; (2) "Did your penis touch [Y.M.'s] vaginal opening"; and (3) "Did your penis go in any of [Y.M.'s] body openings." Evans testified that Powell displayed "physiological changes" during his responses and that those changes "were consistent with deception."

{¶16} Having reviewed the record, we cannot conclude that Powell's conviction is against the manifest weight of the evidence. Y.M. testified in detail about how Powell sexually assaulted her. Although she could not remember exactly when the assault occurred, she testified that it happened during the summer of 2010 on an occasion when she and the other children were left alone with Powell. Other testimony established that Powell was released from prison in mid-June 2010 and that Y.M. and her family moved away from Erica's apartment at the end of July

2010. Moreover, Powell himself admitted that he stayed at Erica's apartment for four or five nights in July 2010. This Court has recognized that "a certain degree of inexactitude" in averring the date of a sexual offense is not fatal to the State's case. *State v. McDougal*, 9th Dist. Lorain No. 99CA007405, 2000 WL 727553, *2 (June 7, 2000), quoting *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist.1994).

{¶17} Moreover, the fact that Y.M. waited to report the abuse does not warrant a reversal of Powell's conviction. R.C. 2907.02(A)(2) does not require proof of any physical injury, and it is not uncommon for victims of abuse to delay their reporting. *See State v. Calhoun*, 9th Dist. Lorain No. 09CA009701, 2011-Ohio-769, ¶ 28. Y.M. explained that she waited to report the abuse because Powell told her not to say anything and because she was afraid that no one would believe her. "Although [Powell] challenges [Y.M.'s] credibility, this Court has repeatedly acknowledged, the trier of fact is in the best position to judge the credibility of witnesses." *State v. McDonald*, 9th Dist. Medina No. 12CA0093-M, 2013-Ohio-4972, ¶ 27. "A verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defense witnesses." *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. Based on our review of the record, we must conclude that this is not the exceptional case where the trier of fact clearly lost its way by convicting Powell of rape. Consequently, Powell's second assignment of error is overruled.

Assignment of Error Number One

> THE CONVICTION IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶18} In his first assignment of error, Powell argues that his conviction is based on insufficient evidence. We disagree.

{¶19} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also Thompkins*, 78 Ohio St.3d at 386. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶20} The sufficiency and manifest weight assignments of error in Powell's brief contain the exact same analyses. That is, the two argument sections read verbatim, with the exception of a reference to the State's burden of production in one (sufficiency) and its burden of persuasion in the other (manifest weight). Powell's analysis contains a blanket statement that the State failed to prove each of the elements of his rape conviction, but he fails to discuss any particular element. The only portion of his argument that even arguably relates to sufficiency is his statement that he was convicted based on Y.M.'s uncorroborated testimony. Yet, "this Court has repeatedly held that '[i]n sex offense cases, * * * the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration.'" *State v. Evans*, 9th Dist. Medina No. 09CA0049-M, 2010-Ohio-3545, ¶ 12, quoting *State v. Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425, ¶ 15. Y.M. testified that Powell forced her to perform fellatio and engaged in intercourse with her against her will. Her testimony, if believed, was

sufficient to support Powell's conviction. *See Evans* at ¶ 12, quoting *Melendez* at ¶ 15. This Court will not undertake a more extensive sufficiency analysis when Powell has not done so. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out."). Powell's first assignment of error is overruled.

## III

{¶21} Powell's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ROBERT A. GAFFNEY, JR., Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.