[Cite as *State v. Morris*, 2012-Ohio-3210.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 11 CA 106 |
| BRIAN T. MORRIS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  10 CR 389


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      July 12 2012


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

CHRISTOPHER A. REAMER                  DUSTIN M. BLAKE
ASSISTANT PROSECUTOR                   338 South High Street
20 South Second Street, 4th Floor      Columbus, Ohio  43215
Newark, Ohio  43055

*Wise, J.*

{¶1}   Defendant-Appellant Brian T. Morris appeals the decision of the Licking County Common Pleas Court denying his motion to suppress evidence.

{¶2}   Plaintiff-Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

{¶3}   At 12:57 a.m. on May 1, 2010, Deputy Randy Morton of the Licking County Sheriff's Office received a dispatch regarding an intoxicated person who refused to leave a property. (T. at 77).  Deputy Morton arrived at the complainant address and was advised that the intoxicated person had left in a silver Chevrolet Cavalier. (T. at 77-79). Deputy Morton began taking a witness statement when he observed the silver vehicle come toward the residence and then turn and leave. (T. at 77-79). Deputy Morton then returned to his cruiser, located the vehicle and observed the driver park the vehicle in a nearby driveway and run into a field. (T. at 79-80). He then observed the driver of the car lying in the field. *Id.*

{¶4}   The driver of the car, Appellant Brian T. Morris, was arrested and taken to Licking Memorial Hospital, where Deputy Morton obtained a search warrant for his blood or urine. Deputy Morton provided a blood or urine collection kit to hospital staff collecting the blood samples. (T. at 75). Phlebotomist Mindy Jo Crouse drew the blood and confirmed she had used the test kit/vials provided by Deputy Morton. (T. at 13.) Both Crouse and Morton were present and verified the blood draw took place at 4:03 a.m. (T. at 18, 84).

{¶5}   The test kit/blood was then taken by Deputy Morton and placed in a locked evidence refrigerator prior to 6:00 a.m. on May 1st. (T. at 85, 91). Deputy Morton

confirmed either one of two evidence technicians at the Licking County Sheriff's Office would have then removed and mailed the sample to the Ohio State Patrol laboratory. (T. at 98).

{¶6} Appellant's blood was later mailed from the Licking County Sheriff's Office and received by the Ohio State Patrol laboratory. Mark Hiatt, with the laboratory, confirmed documentation showed the kit had been received by the laboratory on May 4, 2010, at 12:54 p.m. (T. at 46).

{¶7} Hiatt confirmed that policy/procedure of the laboratory was that any sample be placed in refrigeration upon receipt. (T. at 46). Hiatt confirmed that he personally pulled the sample from refrigeration prior to testing and that he observed nothing abnormal about the blood. (T. at 46-48).

{¶8} Hiatt determined that the blood alcohol content of Appellant on May 1, 2010, to be .169 by weight per unit volume of whole blood. (T. at 39).

{¶9} Appellant was later indicted by the Licking County grand jury on third-degree felony driving under the influence, in violation of R.C. §4511.19(A)(1)(a) and/or (A)(1)(b) and (G)(1)(e)(i) and an attached specification under R.C. §2941.1413 and one misdemeanor count of driving under suspension in violation of R.C. §4510.11(A).

{¶10} Appellant filed a motion to suppress, claiming that law enforcement authorities failed to administer the chemical blood test in compliance with R.C. §4511.19, §4511.19, and Chapter 3701-53 of the Ohio Administrative Code, thereby depriving Appellant of due process of law as guaranteed by the federal and state constitution.

{¶11} Following a hearing, the trial court denied Appellant's motion.

{¶12} Appellant changed his plea to no contest and was found guilty on the felony count of driving under the influence of alcohol in violation of R.C. §4511.19(A)(1)(a) and/or (A)(1)(b) and (G)(1)(e)(i), with an OVI Specification pursuant to R.C. §2941.1413. The State of Ohio dismissed the misdemeanor count of driving under suspension in violation of R.C. §4510.11(A). There was a joint recommendation for 4 years.

{¶13}  Thereafter, Appellant was sentenced to four (4) years, specifically three (3) years on the felony driving under the influence of alcohol and one (1) year on the OVI Specification, with the sentences ordered to run consecutively.

{¶14}  Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶15} "I.    THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE BLOOD-ALCOHOL TEST RESULTS AS APPELLEE FAILED TO DEMONSTRATE SUBSTANTIAL COMPLIANCE WITH THE DEPARTMENT OF HEATH [SIC] REGULATIONS.

{¶16} "II. THE TRIAL COURT ERRED IN DENYING APPELLANTS MOTION TO SUPPRESS, AS THE BLOOD-ALCOHOL TEST WAS NOT CONDUCTED WITHIN THREE HOURS OF APPELLANT'S OPERATION OF HIS VEHICLE."

I., II.

{¶17} In Appellant's assignments of error, Appellant argues that the trial court erred in denying his motion to suppress the blood-alcohol test results in this matter.  We disagree.

{¶18} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning*, (1982) 1 Ohio St.3d 19; *State v. Klein*, (1991) 73 Ohio App.3d 486. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams*, *supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, (1994) 95 Ohio App.3d 93.

{¶19} Here, Appellant argues the trial court incorrectly determined the ultimate issue raised in the motion to suppress, to wit, whether the State of Ohio substantially complied with the department of Health Regulations with regard to the blood sample collected in this matter.

{¶20} Specifically, in this case, Appellant argues that the State failed to demonstrate the appropriate chain of custody, that a solid anticoagulant was used, and/or that the sample was refrigerated while in transit or under examination. Upon review, we find this argument not well-taken.

{¶21} The results of an alcohol content test administered pursuant to R.C. §4511.19 may be admitted into evidence upon a showing that the test was administered in accordance with ODH regulations. R.C. §4511.19(D)(1)(b). In regards to the

collection and handling of urine specimens, ODH promulgated OAC 3701–53–05(F) which states that "while not in transit or under examination, all blood and urine specimens shall be refrigerated." Without a showing of prejudice to a defendant, the results of a blood or urine test administered in substantial compliance with OAC 3701–53–05 are admissible in a prosecution under R.C. 4511.19. *State v. Plummer,* 22 Ohio St.3d 292 (1986), at syllabus.

**{¶22}** In *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 34, the Ohio Supreme Court limited "the substantial compliance standard set forth in *Plummer* to excusing only errors that are clearly *de minimis.* Consistent with this limitation, we have characterized those errors that are excusable under the substantial compliance standard as 'minor procedural deviations'." (Citation omitted.)

**{¶23}** At the suppression hearing, testimony was presented that when Appellant was arrested, he was taken to Licking Memorial Hospital where Deputy Morton obtained a search warrant for his blood or urine. The blood/urine collection kit provided by Deputy Morton was consistent with the testing kits provided by the Ohio State Patrol to hospital staff collecting the blood samples. (T. at 75). The phlebotomist drew the blood and confirmed she had used the test kit/vials provided by Deputy Morton. (T. at 13). Both Deputy Morton and the phlebotomist were present during the blood draw and verified that such took place at 4:03 a.m. (T. at 18, 84). The phlebotomist testified that she inverted the tubes eight to ten times as she had been trained to do for the anti-coagulant to mix with the blood in the kit tubes. (T. at 28, 29). Deputy Morton testified that he then took the test kit with the blood sample and placed it in a locked evidence refrigerator prior to 6:00 a.m. on May 1, 2010. (T. at 85, 91). Deputy Morton testified

that per procedure, either one of two evidence technicians at the Licking County Sheriff's Office would have then removed and mailed the sample to the Ohio State Patrol laboratory. (T. at 98). Appellant's blood was later mailed from the Licking County Sheriff's Office and received by the Ohio State Patrol laboratory. Mark Hiatt, with the laboratory confirmed documentation showing that the kit was received by the laboratory on May 4, 2010, at 12:54 p.m. (T. at 46). Hiatt confirmed that policy/procedure of the laboratory was that any sample be placed in refrigeration upon receipt. (T. at 46). Hiatt confirmed that he personally pulled the sample from refrigeration prior to testing and that he observed nothing abnormal about the blood. (T. at 46-48).

**{¶24}** In *State v. Plummer,* 22 Ohio St.3d 292 (1986), the Ohio Supreme Court found no violation of OAC 3701–53–05(F) when a urine specimen went unrefrigerated for a period of one hour and twenty-five minutes prior to mailing, and again went unrefrigerated for a period of three to four hours after the specimen had been delivered to the laboratory. *See also*, *State v. Mayl,* 106 Ohio St.3d 207, 2005–Ohio–4629, ¶ 50, fn. 2 (concluding there was substantial compliance with OAC 3701–53–05(F) where blood sample was not refrigerated for nearly one hour and 45 minutes); *State v. Price,* 11th Dist. No.2007–G–2785, 2008–Ohio–1134, ¶ 26 (holding that retention of a blood specimen in an unrefrigerated state for six hours before mailing not a violation); *State v. Schell,* 5th Dist. CA–7884, 1990 WL 83992 (June 18, 1990) (blood sample unrefrigerated for five hours is within range of substantial compliance). *But see*, *State v. DeJohn,* 5th Dist. No. 06–CA–16, 2007–Ohio–163, (finding that failure to refrigerate urine sample for 17 hours while in possession of trooper before mailing was not a slight delay or minor procedural deviation).

**{¶25}** Based on the foregoing, we find that the State demonstrated substantial compliance with OAC 3701–53–05(F) as, pursuant to *Plummer* and *Mayl, supra*, the time periods where the sample was not refrigerated was still sufficient to constitute substantial compliance. In addition, the time period the test sample was removed from the refrigerator until the testing process was concluded, in this court's view, would constitute "under examination" for purposes of the regulation.

**{¶26}** Appellant also attacks the reliability of the blood test results because Crouse did not know what type of anti-coagulant was in the preservative capsule, or if it was sodium fluoride. However, OAC 3701–53–05 does not set forth, nor does Appellant identify, any ODH requirement regarding sodium fluoride.

**{¶27}** Appellant further argues that the blood-alcohol test was not performed within three (3) hours of Appellant's operation of his vehicle.

**{¶28}** R.C. §4511.19(D)(1)(b) provides that the court may admit evidence as shown by a chemical analysis of a bodily substance "withdrawn within three hours of the time of the alleged violation."

**{¶29}** The rationale for this requirement is to have a sample closely related in time as (circumstantial) evidence of the concentration at the time of operation. If the sample is taken within that time, no expert testimony is required to relate back to the time of operation. A later test may still be admissible with expert testimony to calculate, by retrograde extrapolation, the concentration at the time of operation. *Newark v. Lucas,* 40 Ohio St.3d 100, 532 N.E.2d 130 (1988); *State v. Hassler,* 115 Ohio St.3d 322, 875 N.E.2d 46 (2007). The reason for the rule is the relevance and reliability of the chemical test result.

**{¶30}** In the instant case, the evidence and testimony in the record establish that Deputy Morton was first dispatched at 12:57 a.m., arrived on the scene approximately five (5) minutes later, observed Appellant's vehicle not long after, and then saw Appellant park and flee the vehicle at 1:23 a.m.  The blood draw in this case occurred at 4:03 a.m., well within the three-hour window set forth in R.C. 4511.19(D)(1).

**{¶31}** Based on the foregoing, we find Appellant's assignments of error not well-taken and overruled same.

**{¶32}** For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0706

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                           :
                                        :
    Plaintiff-Appellee                  :
                                        :
-vs-                                    :                JUDGMENT ENTRY
                                        :
BRIAN T. MORRIS                         :
                                        :
    Defendant-Appellant                 :                Case No. 11 CA 106


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

Costs assessed to Appellant.


                          _____


                          _____


                          _____

                                      JUDGES