[Cite as *State v. Roberts*, 2014-Ohio-4126.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 13CA0065-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOBBY LEE ROBERTS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 12CR0679 |

DECISION AND JOURNAL ENTRY

Dated: September 22, 2014

---

BELFANCE, Presiding Judge.

{¶1} Bobby Lee Roberts appeals the order of the trial court denying his motion to suppress. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Roberts' teenage daughter called the police to report that Mr. Roberts had fired a gun at her and her mother, Synthia Smith. The police responded and took Mr. Roberts into custody. Upon entering the home, Sergeant Scott Marcum detected the odor of gunpowder and saw a .40 caliber casing on the floor and an apparent bullet hole in the wall. He asked Ms. Smith where the guns were kept, and she showed him to a closet in the bedroom. Sergeant Marcum searched the closet, finding a number of firearms as well as a cigar box that contained drug paraphernalia. Later testing would reveal that the cigar box also contained trace amounts of cocaine.

{¶3} Mr. Roberts was indicted for possession of a schedule II controlled substance. Mr. Roberts filed a motion to suppress, which the trial court denied. Mr. Roberts subsequently pleaded no contest to the indictment, and the trial court sentenced him to three years of community control. Mr. Roberts has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT SHOULD HAVE GRANTED THE DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM A WARRANTLESS SEARCH OF THE DEFENDANT'S RESIDENCE WHERE THE SEARCH WAS BASED UPON THE CONSENT OF A[N] ESTRANGED THIRD-PARTY GIRLFRIEND IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION. EVEN IF IT CAN BE SHOWN CONSENT EXISTED HEREIN, THE CONSENT DID NOT EXTEND TO CONTAINERS WITHIN THE RESIDENCE.

{¶4} Mr. Roberts argues that the trial court should have granted his motion to suppress because there was no valid consent to search given by his estranged girlfriend. He further argues that, even if there was consent to search the closet, Sergeant Marcum did not have consent to search the cigar box.

{¶5} The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6} The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. "Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions." *State v. Robinson*, 9th Dist. Summit No. 26741, 2014-Ohio-579, ¶ 13, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "It is equally well established, however, that a search of property without a warrant or probable cause but with proper consent having been voluntarily obtained does not violate the Fourth Amendment." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 98. "The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.* at ¶ 99. "The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect." *Id*. *See also Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (The scope of consent is defined by the expressed object of the search.). Furthermore, "'the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.'" *Fernandez v. California*, ___ U.S. ___, 134 S.Ct. 1126, 1133 (2014), quoting *United States v. Matlock*, 415 U.S. 164, 170 (1974).

{¶7} The trial court made the following findings of fact in its journal entry denying Mr. Roberts' motion to suppress. Medina City Police officers responded to a 9-1-1 call by Mr. Roberts' daughter, who reported that Mr. Roberts had been drinking and had fired a weapon at them inside the house. Sergeant Marcum arrived at the scene while other officers were arresting Mr. Roberts and spoke with Ms. Smith. He asked if he could come into the home, and Ms.

Smith said that he could. Sergeant Marcum detected the odor of gunpowder in the house and observed a shell casing on the floor and an apparent bullet hole in the wall. Sergeant Marcum asked Ms. Smith where the guns were located, and Ms. Smith took him to a closet in the master bedroom, opening the closet for Sergeant Marcum. Sergeant Marcum searched the closet and discovered two .40 caliber pistols, an AR-15, and two additional guns. He also found a box containing loose ammunition. "Ms. Smith told Sergeant Marcum that she wanted the guns removed from the residence[,]" and Sergeant Marcum took the guns and the box with the loose ammunition. After a review of the record, we conclude that the trial court's findings are supported by competent, credible evidence, and, therefore, we accept them as true.

{¶8} In this appeal, the primary question before us is whether the contraband found in the cigar box was discovered during the course of a search permitted by the Fourth Amendment. As noted above, an exception to the warrant requirement exists when police officers have received voluntary consent to conduct a search. *Roberts* at ¶ 98. Mr. Roberts argues that Sergeant Marcum did not receive consent to search from Ms. Smith because Ms. Smith's consent was not voluntary. Whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Id*. at ¶ 99. *See also State v. Robinette*, 80 Ohio St.3d 234, 243 (1997), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-249 ("'Voluntariness is a question of fact to be determined from all the circumstances[.]'"). Mr. Roberts' precise argument is unclear, but he appears to suggest that the consent was invalid because Ms. Smith did not understand her rights. However, Mr. Roberts does not point to any part of the record that would support his assertion that Ms. Smith did not know she had the right to refuse, *see* App.R. 16(A)(7), and our own review of the record has not uncovered any testimony to that effect. Furthermore, "'while the

subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.'" *Robinette* at 243, quoting *Bustamonte* at 249. Nor was Ms. Smith in police custody when she gave her consent. *Compare with Florida v. Royer*, 460 U.S. 491, 502 (1983) ("[H]ad Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him. We have concluded, however, that at the time Royer produced the key to his suitcase, the detention to which he was then subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity."). Based upon the totality of the circumstances as reflected in the record, we cannot conclude that the record supports Mr. Roberts' contention that Ms. Smith's consent was involuntary.

{¶9} Mr. Roberts also suggests that Ms. Smith's consent was invalid because she was an estranged significant other, perhaps implying that there was an absence of common authority over the residence. However, Mr. Roberts does not develop this argument, nor does he cite any portion of the record that could support his assertion that he and Ms. Smith were estranged. *See* App.R. 16(A)(7). Similarly, Mr. Roberts asserts, without any support from the record, that the police entered, exited, and reentered the home, rendering Ms. Smith's consent invalid. Our review of the record has not uncovered any evidence from which one could draw the inference that either of Mr. Roberts' factual assertions are true. Accordingly, given the evidence in the record, we cannot conclude that Mr. Roberts' limited arguments possess merit. *See* App.R. 16(A)(7); *State v. McDonald*, 9th Dist. Medina No. 12CA0093-M, 2013-Ohio-4972, ¶ 32.

{¶10} Mr. Roberts also argues that Ms. Smith's consent was insufficient to permit Sergeant Marcum to look inside the cigar box. A consensual search is limited in scope to what

an objectively reasonable person would believe was permitted by the exchange between an officer and the person giving consent. *See Jimeno*, 500 U.S. at 251. Ms. Smith testified that she gave Sergeant Marcum permission to look for firearms in the closet. Furthermore, the trial court specifically found that, when Sergeant Marcum asked where the firearms were, Ms. Smith took him to the closet and opened it for him. Thus, we conclude that, at the very least, Ms. Smith gave Sergeant Marcum permission to search the closet for firearms.[1]

{¶11} Thus, the question becomes whether a reasonable person would have understood Ms. Smith's consent to search the closet to include opening a cigar box in the closet. "The scope of a search is generally defined by its expressed object." *Id*. This would reasonably include containers that could contain the object of the search. *See id.* Ms. Smith testified that she specifically gave Sergeant Marcum permission to search for guns, and there is no indication that she limited the scope of the search in any way or that she told Sergeant Marcum how many guns were in the closet. Furthermore, although Sergeant Marcum did not testify to the size of the cigar box, Ms. Smith did testify that the box was big enough to contain a handgun. Thus, based upon the totality of the circumstances reflected in the record before us, Ms. Smith's consent to search the closet for firearms, and specifically a handgun, would reasonably include the cigar box since it could contain the object of the search. *See id*.

{¶12} Nevertheless, Mr. Roberts, pointing to *Georgia v. Randolph*, 547 U.S. 103 (2006), argues that Sergeant Marcum did not have permission to search the closet because the police had arrested Mr. Roberts and removed him from the property. However, we fail to see how *Randolph* is applicable in this case. In *Randolph*, the Supreme Court held "that a physically

---

[1] There was conflicting testimony at trial as to whether Ms. Smith gave Sergeant Marcum permission to search for ammunition as well as the firearms. However, the trial court never made any findings regarding this testimony.

present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id.* at 122-123.  However, Mr. Roberts was not physically present at the house when Ms. Smith gave Sergeant Marcum permission to search, and, furthermore, there is no evidence that Mr. Roberts *ever* objected to the search.

{¶13}  Finally, in the absence of valid consent to search, Mr. Roberts further suggests that the plain view doctrine did not permit Sergeant Marcum to open the cigar box.  However, because we find that, under the circumstances in this case, the scope of Ms. Smith's consent reasonably included permission to open the cigar box to search for a firearm, *see Jimeno*, 500 U.S. at 251, it is unnecessary to determine the propriety of Sergeant Marcum's actions under the plain view doctrine.

{¶14}  Accordingly, Mr. Roberts' assignment of error is overruled.

III.

{¶15}  In light of the foregoing, the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

RUSSELL A. BUZZELLI, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.