[Cite as *State v. Watson*, 2015-Ohio-283.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27257 |
|---|---|

Appellee

v.

JIBREE L. WATSON

Appellant

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CR 13 02 0510

DECISION AND JOURNAL ENTRY

Dated: January 28, 2015

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Jibree L. Watson appeals from the judgment of the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Just before midnight, Ohio State Highway Patrol Trooper Jared Haslar noticed a vehicle he believed was being driven down the road without its headlights illuminated. While the parking lights and fog lights were illuminated, he observed that the main headlights were not lit. He continued to observe the vehicle and stopped it after it failed to properly use a turn signal. Subsequently, Trooper Haslar smelled burnt marijuana coming from the vehicle and saw what he believed to be a marijuana cigarette in plain view. A search of the vehicle ensued, which revealed more marijuana, a loaded .38 revolver and a prescription bottle containing an unknown substance.

{¶3} Mr. Watson was then placed under arrest for carrying a concealed weapon. He was transported to the Summit County Jail, where field sobriety tests were administered. Mr. Watson was then asked to consent to a urine test, which he did. Mr. Watson was searched again upon being admitted to the jail and an additional amount of marijuana was found in his undergarments.

{¶4} Ultimately, Mr. Watson was charged with prohibition of conveyance of weapons, drugs of abuse, or intoxicating liquor onto grounds of specified governmental facility, carrying concealed weapons, improperly handling firearms in a motor vehicle, operating under the influence of alcohol or drugs, and possession of marijuana. Mr. Watson filed a motion to suppress, along with a supplement to his motion. The trial court held a hearing and allowed post-hearing briefing, which both sides submitted. Thereafter, the trial court denied Mr. Watson's motion to suppress. Mr. Watson pleaded no contest to carrying concealed weapons and operating under the influence of alcohol or drugs. The remaining charges were dismissed. The trial court sentenced Mr. Watson to 12 months in prison but suspended the sentence upon condition of Mr. Watson completing 12 months of community control.

{¶5} Mr. Watson has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED THE DEFENDANT'S FOURTH AMENDMENT AND OHIO CONSTITUTIONAL RIGHTS AGAINST ILLEGAL SEARCH AND SEIZURE BASED UPON HIS MOTION TO SUPPRESS AND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE.

{¶6} Mr. Watson argues in his first assignment of error that the trial court erred in denying his motion to suppress because Trooper Haslar lacked probable cause or reasonable

suspicion to stop Mr. Watson's vehicle, that the search of the vehicle was unconstitutional, and that the urine test was not performed in compliance with applicable procedures.

{¶7} The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

**Traffic Stop**

{¶8} Mr. Watson first asserts that Trooper Haslar lacked probable cause or reasonable suspicion to stop his vehicle.

{¶9} The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Roberts,* 9th Dist. Medina No. 13CA0065-M, 2014-Ohio-4126, ¶ 6. Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Stopping a vehicle and detaining its occupants constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979). "Probable cause is * * * a complete justification for a traffic stop * * *." *State v. Mays* 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23. In addition, an investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer

is justified in making an investigatory stop." (Internal quotations and citations omitted.) *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10. Whether reasonable suspicion exists is based on the totality of the circumstances. *Mays* at ¶ 7.

{¶10} Trooper Haslar was the sole witness at the suppression hearing. He stated that, on the evening of February 14, 2013, he was on patrol and traveling south on Dover Avenue in Akron when he noticed a vehicle traveling north on Dover avenue that did not have its headlights on but only had its parking lights and fog lights illuminated. Trooper Haslar then observed the vehicle turn onto Cadillac Avenue and then onto Winton Avenue. When the vehicle approached the intersection of Winton Avenue and Copley, Trooper Haslar noticed that the driver failed to use a turn signal 100 feet before the intersection. At that point in time, after the vehicle turned west onto Copley Road, Trooper Haslar initiated the stop. When asked by the prosecutor why he stopped the vehicle, he stated the stop was based on the headlight violation and the turn signal violation.

{¶11} Mr. Watson argues that he did have his headlights on such that a headlight violation could not be a valid basis for the stop. He also maintains that Trooper Haslar did not notice that Mr. Watson did not use his turn signal in accordance with the law and only put that information in his report after the fact. Accordingly, it is Mr. Watson's contention that, because Trooper Haslar was not aware of the turn signal violation at the time of the stop, it could not be a basis upon which to justify the traffic stop.

{¶12} The trial court in its entry did not address the alleged violation of the headlight law, instead finding that Trooper Haslar, prior to conducting the stop, observed that Mr. Watson failed to use his turn signal at least 100 feet prior to making a left turn. The trial court found this

to be a valid basis for the stop and noted that Mr. Watson's failure to use his turn signal in accordance with the law was uncontested.

{¶13} On appeal, Mr. Watson does not contest that he failed to use his turn signal in accordance with the law or that such a violation would be a valid basis for a stop. Instead, he essentially challenges the credibility of the trooper's testimony. He maintains, because Trooper Haslar did not mention the turn signal violation to Mr. Watson at the time of the stop, did not cite him for the violation, and did not include the violation in his report until after he had watched the video of the stop, Trooper Haslar did not actually observe the violation prior to the stop and did not stop Mr. Watson for that violation. Thus, Mr. Watson challenges the trial court's factual findings.

{¶14} As noted above, Trooper Haslar testified on direct that he initiated the traffic stop "[b]ased on the headlight violation and the turn signal violation * * *." On cross-examination, he did acknowledge that he did not inform Mr. Watson of the turn signal violation or cite him for it and also acknowledged that he did not include the turn signal violation in any report until after he viewed the video of the stop. However, Trooper Haslar never indicated that he did not observe the turn signal violation prior to initiating the stop. Additionally, Trooper Haslar never recanted his statement that the turn signal violation was part of the reason that he decided to stop Mr. Watson's vehicle. Although it is apparent that Mr. Watson presented evidence in an effort to challenge Trooper Haslar's credibility as to his basis for initiating the stop, it appears from the trial court's entry that it found Trooper Haslar's testimony credible and there is evidence in the record to support the trial court's findings. Accordingly, irrespective of whether Trooper Haslar was justified in stopping Mr. Watson's vehicle for a headlight violation, given the trial court's finding that Trooper Haslar observed the turn signal violation prior to initiating the stop, its

determination that Trooper Haslar had a valid basis to stop Mr. Watson's vehicle was not erroneous. *See Campbell*, 2005-Ohio-4361, at ¶ 10.

**Search of the Vehicle**

{¶15} The Supreme Court of Ohio has recognized that "'[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search [the passenger compartment of] a motor vehicle' without a warrant." *State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 12, 50, quoting *State v. Moore,* 90 Ohio St.3d 47, 47 (2000). In addition, "[u]nder the plain view exception [to the warrant requirement], an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was immediately apparent that the item was incriminating." (Internal quotations and citations omitted.) *State v. Littell,* 9th Dist. Summit No. 27020, 2014-Ohio-4654, ¶ 10.

{¶16} In the instant matter, Trooper Haslar testified on direct that, "[i]mmediately upon making contact with [Mr. Watson], [he] could smell a strange odor of burnt marijuana coming from inside the vehicle. [He] also observed in plain view in the center console area what [he] believed to be the end of a burnt marijuana cigarette." He further averred that "[t]hrough [his] training and [his] experience on the job over the years and that kind of thing, that's definitely what [he] believed it was." Mr. Watson does not suggest that Trooper Haslar would not have possessed probable cause to search the passenger compartment of the vehicle if he had smelled the odor of burnt marijuana as he approached the vehicle and upon making initial contact with the driver saw what appeared to be a marijuana cigarette in plain view. *See Farris* at ¶ 12, 50.[1] In its entry, the trial court determined that Trooper Haslar smelled the burnt marijuana odor as he approached Mr. Watson's vehicle. Mr. Watson maintains, however, that Trooper Haslar did not

---

[1] We note that Mr. Watson does not contend that Trooper Haslar was not a person qualified to detect the odor.

smell the odor of burnt marijuana or see the marijuana cigarette prior to placing his head through the window of the vehicle. Consequently, Mr. Watson maintains that Trooper Haslar's act of placing his head inside the vehicle violated the Fourth Amendment. Mr. Watson argues that his factual assertion is correct because Trooper Haslar did not comment on the marijuana smell to Mr. Watson until after he allegedly placed his head inside the vehicle.

{¶17} We note that the video of the stop is not of ideal quality and it is difficult to determine whether Trooper Haslar in fact did place his head inside the vehicle. Nonetheless, consistent with the trial court's factual determinations, there is evidence in the record from which one could conclude that Trooper Haslar smelled the burnt marijuana and observed the marijuana cigarette prior to that point in time. When asked on cross-examination about why Trooper Haslar stuck his head in the car before he told Mr. Watson that he smelled marijuana, Trooper Haslar stated that he "could smell it when [he] was walking up to the car, and when [he] got up there, [he] asked [Mr. Watson] for the documents, and he was reaching around inside the car over the passenger seat area trying to get those documents. That's when [he] poked [his] head right there near the car." Trooper Haslar indicated that he did not know whether his head was inside the window and later said, if his head entered inside the window, it was only by an inch. Mr. Watson's argument is premised upon his assertion that the officer placed his head into Mr. Watson's vehicle prior to smelling the odor of burnt marijuana and seeing the cigarette in plain view. However, the trial court's factual determination that Trooper Haslar smelled the marijuana as he approached Mr. Watson's vehicle is supported by the record. Accordingly, we cannot say the trial court erred in overruling Mr. Watson's motion to suppress on this basis.

**Urine Test**

{¶18} Mr. Watson also asserts that the trial court erred in failing to suppress the results of the urine test because the State failed to comply with the procedures outlined in the Ohio Revised Code and the Ohio Administrative Code.

{¶19} In *Burnside,* the Supreme Court of Ohio set forth the framework for considering challenges to blood and urine test results. *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 24.

> The defendant must first challenge the validity of the [drug] test by way of a pretrial motion to suppress; failure to file such a motion waives the requirement on the state to lay a foundation for the admissibility of the test results. After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health. Once the state has satisfied this burden and created a presumption of admissibility, the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation.

(Internal quotations and citations omitted.) *Id.*

{¶20} The State presented evidence during the suppression hearing concerning the circumstances surrounding the urine test. In light of the arguments advanced, the trial court granted the State and Mr. Watson leave to file post-hearing briefs on the issue of whether the urine test was conducted in accordance with applicable law. In its entry, the trial court concluded that Trooper Haslar's collection of the urine sample complied with Ohio law. The trial court focused on Ohio Adm.Code 3701-53-05(F) and found that the trooper substantially complied with that provision and that Mr. Watson had not demonstrated he was prejudiced by the lack of strict compliance. It is clear that, in making its ruling, the trial court considered the post-hearing briefs.

{¶21} Mr. Watson's appellate brief focuses solely on the testimony at the suppression hearing and he, thus, maintains that the trooper's testimony did not establish substantial compliance with the appropriate laws. Additionally, while Mr. Watson mentions numerous points that he asserts evidence lack of compliance, he does not associate the alleged failures with a provision in the revised code or the administrative code that would establish lack of compliance. *See* App.R. 16(A)(7). Mr. Watson also does not acknowledge the State's post-hearing brief and does not explain how, when considering the testimony and the post-hearing briefs and exhibits together, the State failed to demonstrate substantial compliance. Further, assuming that there was substantial compliance, Mr. Watson has failed to explain how he was prejudiced by less than strict compliance. *See Burnside* at ¶ 24.

{¶22} Notwithstanding, we will briefly examine Mr. Watson's allegation concerning substantial compliance as to refrigeration of the urine specimen. Ohio Adm.Code 3701-53-05(F) states that, "[w]hile not in transit or under examination, all blood and urine specimens shall be refrigerated." Mr. Watson challenges only the period of time between when the specimen was collected and when it was placed in the mail. The trial court calculated this time to be 63 minutes, and this finding has not been challenged on appeal. There is likewise no dispute that the specimen was not refrigerated during this time period. We note that Mr. Watson has not pointed to a single case that holds that lack of refrigeration for just over an hour amounts to a failure to substantially comply with Ohio Adm.Code 3701-53-05(F). Although Mr. Watson relies upon *State v. Plummer,* 22 Ohio St.3d 292 (1986), in that case, the Supreme Court found that the failure to refrigerate the specimen for the 1 hour and 25 minutes prior to mailing amounted to *substantial compliance* with the regulation. *See id.* at 294-295. Accordingly, in light of Mr. Watson's limited argument, *see* App.R. 16(A)(7), we cannot conclude the trial court

erred in finding substantial compliance with Ohio Adm.Code 3701-53-05(F). *See, e.g., State v. Morris,* 5th Dist. Licking No. 11 CA 106, 2012-Ohio-3210, ¶ 24 (noting examples of substantial compliance, as well an example of the failure to substantially comply).

{¶23} In summary, in light of the limited arguments made on appeal, we cannot say that Mr. Watson has demonstrated that the trial court erred in refusing to suppress the results of the urine test.

{¶24} Mr. Watson's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED THE DEFENDANT'S FIFTH AMENDMENT AND OHIO CONSTITUTIONAL RIGHTS AGAINST SELF-INCRIMINATION BASED UPON HIS MOTION TO SUPPRESS AND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE.

{¶25} Mr. Watson asserts in his second assignment of error that the trial court erred in failing to grant his motion to suppress certain statements he made to Trooper Haslar. We do not agree.

{¶26} It appears that Mr. Watson seeks to suppress statements that he made after he was required to exit his vehicle and was subjected to a search of his person. At that point, Mr. Watson maintains that Trooper Haslar's questioning amounted to a custodial interrogation and that Trooper Haslar did not initially read Mr. Watson his *Miranda* rights. Further, Mr. Watson asserts that, when Trooper Haslar finally did read Mr. Watson his *Miranda* rights and then continued questioning him, the statements were still subject to suppression as the questioning violated his constitutional rights. We begin by pointing out that Mr. Watson has not specifically detailed which statements he believes should have been suppressed, nor has he listed any

evidence that was obtained directly from those statements which also could be subject to suppression.

{¶27} "A defendant need not be under arrest * * * to be in custody for *Miranda* purposes." (Internal quotations omitted.) *Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 13. "Although a motorist who is temporarily detained as the subject of an ordinary traffic stop is not in custody for the purposes of *Miranda*, * * * if that person thereafter is subjected to treatment that renders him in custody for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." (Internal quotations and citations omitted.) *Id.*

{¶28} In *Farris,* the Ohio Supreme Court concluded that the defendant was in custody when the officer patted the defendant down, took the defendant's keys, had him get into the police cruiser, and told the defendant his vehicle was about to be searched. *Id.* at ¶ 14. The Court held that "a reasonable man in [the defendant's] position would have understood himself to be in custody of a police officer as he sat in the cruiser." *Id.*

{¶29} It is clear that Mr. Watson believes his situation is analogous to the situation of the defendant in *Farris.* However, even if that were so, Mr. Watson made incriminating statements prior to the point in time he challenges. Trooper Haslar testified that, upon approaching the vehicle, he could smell the odor of burnt marijuana. Mr. Watson has not asserted that the trooper could not question Mr. Watson to dispel the concern created by that initial encounter. The record reflects that, upon initially approaching the vehicle, Trooper Haslar asked Mr. Watson a series of questions about the smell of marijuana and its association with Mr. Watson. At the end of the series of questions, Mr. Watson, responded affirmatively to the questions, indicating his connection to the marijuana.

{¶30} Mr. Watson has not explained why this initial admission to Trooper Haslar would be inadmissible. *See Farris* at ¶ 13 ("[A] motorist who is temporarily detained as the subject of an ordinary traffic stop is not in custody for the purposes of *Miranda* * * *.") (Internal quotations omitted.). Given that admission, and the fact that Mr. Watson has failed to identify the particular subsequent statements he challenges, we are unable to determine that his subsequent statements, even if they should have been suppressed, prejudiced him. Assuming Mr. Watson sought to suppress his subsequent admission to using marijuana a short time prior to the stop, under the circumstances of this case, the failure to suppress those statements would be harmless beyond a reasonable doubt. *See State v. Bowshier,* 2d Dist. Clark No. 2309, 1987 WL 33784, *2 (Dec. 23, 1987), citing *Chapman v. California,* 386 U.S. 18 (1967); *State v. Brown,* 65 Ohio St.3d 483, 485 (1992).

{¶31} Given the trial court's factual findings, Trooper Haslar smelled the odor of burnt marijuana coming from the vehicle and saw the end of a burnt marijuana cigarette upon approaching the vehicle. Upon exiting the vehicle, Trooper Haslar also noted that Mr. Watson smelled of marijuana. Pursuant to the valid probable cause search, additional marijuana was found in Mr. Watson's vehicle. Finally, Trooper Haslar obtained a positive urine sample from Mr. Watson, the results of which we have already determined were admissible given the arguments made about its collection. Mr. Watson has not argued that Trooper Haslar would not have sought a urine sample absent the statements made by Mr. Watson. Accordingly, we fail to see how the admission of the statements made by Mr. Watson subsequent to his removal from the vehicle could be prejudicial to him in light of the other admissible evidence. Accordingly, upon consideration of the argument contained in Mr. Watson's appellate brief, we cannot say his assignment of error has merit.

**{¶32}** Mr. Watson's second assignment of error is overruled.

III.

**{¶33}** The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———————————————
EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.